UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Charles Hoefer and Hoefer Group, LLC,<br><br>                Plaintiffs,<br><br>    vs.<br><br>Josh Teigen, Shayden Akason, Richard Garman, David Lehman, and James Albrecht,<br><br>                Defendants. | **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**<br><br><br>**Case No. 1:25-cv-00207** |

## INTRODUCTION

[¶1]    Charles Hoefer ("Hoefer") and Hoefer Group, LLC (collectively "Plaintiffs") brought this suit against Josh Teigen, Shayden Akason, Richard Garman, David Lehman, and James Albrecht (collectively "Defendants") in their individual capacities related to their work or involvement in administering the North Dakota Development Fund ("Fund"). Doc. No. 1 ("Complaint"). The relationship between Plaintiffs and the Defendants stems from an ordinary business transaction wherein the Fund approved a line of credit to Plaintiffs to relocate and develop its business in North Dakota. The Defendants have no other relationship with Plaintiffs beyond that of being a creditor for the statutorily mandated purpose of seeking to encourage economic development in North Dakota. It is from that arm's length financial transaction that Plaintiffs bring this action making broad, generalized assertions that Defendants violated Plaintiffs' constitutional rights.

[¶2]    Turning to the Complaint, despite its length, Plaintiffs' Complaint suffers from its lack of making specific allegations as to each individual Defendant's conduct or actions as is required for Section 1983 claims and its Complaint should be dismissed for this reason alone. But even stronger is the Defendants' entitlement to qualified immunity on all of Plaintiffs' claims because the rights Plaintiffs complain of are not clearly established and there is a lack of any existing precedent that would have placed the statutory or constitutional question beyond debate such that each of the Defendants individually would have known that their personal actions violated a constitutional or statutory right. Plaintiffs' Complaint must be dismissed with prejudice for failing to state a claim

upon which relief can be granted because the Defendants are entitled to qualified immunity on all claims.

## BRIEF FACTUAL BACKGROUND

[¶3]    The Fund is a statutorily created "statewide nonprofit development corporation" which is exclusively administered for business development in the State of North Dakota. N.D. Cent. Code § 10-30.5-02(1), (2). The Fund is statutorily placed under the North Dakota Department of Commerce ("Department"), but is managed by an eight (8) member board of directors. N.D. Cent. Code §§ 10-30.5-01(4), 10-30.5-03, 10-30.5-05(1). The board that manages the Fund has the authority and makes the decision to provide loans or capital for new or expanding businesses in the state or relocating businesses to North Dakota, i.e. it takes an action from the board, not individuals, to make decisions that would financially obligate the Fund to a prospective business venture. N.D. Cent. Code § 10-30.5-02(1). Plaintiffs applied to the Fund for a line of credit to relocate an RV business to North Dakota, and the board approved Plaintiffs' application ultimately providing Plaintiffs with a loan from the Fund.

[¶4]    Defendant Joshua Teigen served as the Commissioner of the Department from 2022–2024; the commissioner or his designee must be a member of the board of directors for the Fund. N.D. Cent. Code § 10-30.5-03. Defendant Shayden Akason currently serves as the Department's head of investment and innovation — a position he has held since 2021. Defendant Richard Garman serves as the director of the Department's Economic Development and Finance division. David Lehman has served as the manager of the Department's Advanced Manufacturing division since 2018. James Albrecht was appointed to the Fund's board of directors in 2016 and is currently the President of the board.

[¶5]    Plaintiffs allege eight claims against Defendants; six of which arise under 42 U.S.C. § 1983 for alleged violations of constitutional rights and two for alleged violations of federal statutes. The counts are:

1)     Count I sets forth a claim under 42 U.S.C. § 1983 alleging that Plaintiffs' rights under the Fourteenth Amendment Equal Protection Clause were violated due to "Class of One" Treatment to deprive property and liberty rights;

2)     Count II sets forth a claim under 42 U.S.C. § 1983 alleging that Plaintiffs' rights under the First and Fourteenth Amendments were violated by retaliation, suppression, and chilling the exercise of protected free speech rights, and of Plaintiffs' exercise of their right of Petition;

3)     Count III sets forth a claim under 42 U.S.C. § 1983 alleging the Plaintiffs' rights under the Fourteenth Amendment's Equal Protection Clause were violated through discriminatory treatment of a member of a protected class;

4)     Count IV sets forth a claim under 42 U.S.C. § 1983 alleging a deprivation of Plaintiffs' procedural due process rights in violation of the Fourteenth Amendment of the United States Constitution;

5)     Count V sets forth a claim under 42 U.S.C. § 1983 alleging a deprivation of Plaintiffs' substantive due process rights in violation of the Fourteenth Amendment of the United States Constitution;

6)     Count VI alleges that Plaintiffs are entitled to relief under 18 U.S.C. § 1595 pursuant to a violation of 18 U.S.C. § 1589;

7)     Count VII sets forth a claim under 42 U.S.C. § 1983 alleging that Plaintiffs suffered an unconstitutional taking in violation of the Fifth, Fourth, and Fourteenth Amendments; and

8)     Count VIII alleges that Defendants conspired to deprive Plaintiffs' rights under the First, Fourth, Fifth, and Fourteenth Amendments in violation of 42 U.S.C. § 1985.

[¶6]     Defendants move to dismiss the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. This Court must grant Defendants' motion to dismiss for failure to state a claim because the Defendants are entitled to qualified immunity and Plaintiffs

cannot overcome this defense. Plaintiffs have not pled a constitutional or statutory violation and cannot in any event demonstrate that any proffered violation was clearly established.

## LAW AND ARGUMENT

[¶7]    Plaintiffs' Complaint is wholly deficient when tested under Rule 12(b)(6) because it fails to plead with factual specificity the conduct of each of the individual defendants as required for Section 1983 claims. Likewise, the Complaint fails to state a claim against any of the Defendants because they are each entitled to qualified immunity on all of Plaintiffs' claims and thus the Complaint is fatally flawed and must be dismissed.

## I.    Legal standards applicable to Rule 12(b)(6) motion to dismiss.

[¶8]    The Defendants move to dismiss Plaintiffs' Complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Under Rule 12(b)(6), a defendant can test the legal sufficiency of a complaint to eliminate those actions "which are fatally flawed in their legal premises and deigned to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, *Mo.*, 244 F.3d 623, 627 (8th Cir. 2001). While pursuant to a Rule 12(b)(6) motion the court must accept the complaint's allegations as true *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007), and view them in the light most favorable to the nonmoving party, *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009), the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Courts are not required to accept legal conclusions as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (emphasis added).

[¶9]    "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. However, where it is possible to infer an "'obvious alternative explanation'" that stems from a "legitimate [government] policy," instead of the unlawful activity asserted, no such inference is warranted. *Iqbal*, 556 U.S. at 682 (quoting *Twombly*, 550 U.S. at 567). Further, "shotgun" complaints fail to state a claim for relief and include those that assert "multiple claims against

multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015); *see also Tatone v. SunTrust Mortg., Inc.*, 857 F. Supp. 2d 821, 831 (D. Minn. 2012) ("A complaint which lumps all defendants together and does not sufficiently allege who did what to whom, fails to state a claim for relief because it does not provide fair notice of the grounds for the claims made against a particular defendant."). Not only does the Complaint make multiple claims against multiple defendants without specifics, in addition, the Complaint includes conclusory allegations against many other persons without any factual specifics from which one could infer how each actually named defendant is responsible.[1]

[¶10]   Although Plaintiff's Complaint is long, it is devoid of the specific factual allegations necessary to give fair notice to each individual Defendant of what it is that each is alleged to have done. This is especially true considering the Defendants are named in their individual capacities and suit is brought pursuant to Section 1983. To state a claim for which relief can be granted against a defendant under Section 1983, a plaintiff must articulate with respect to each government official what the specific conduct is that the official committed that gives rise to a violation of the plaintiff's constitutional or statutory rights. *Dahl v. Weber*, 580 F.3d 730, 733 (8th Cir. 2009) ("Section 1983 liability is personal."); *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) ("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights."); *Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Where a plaintiff does not specifically "allege that a defendant was personally involved in or had

---

[1] *See e.g.* Doc. No. 1, ¶¶ 10, 14, 24, 71 91, 125, 137, 191, 896, 914 . ("Governor Burgum and his subordinates", "A coalition of local, federal and high ranking State of ND officials", "Other third parties…some defendants and also other State of ND officials", "Some North Dakota law enforcement officials then also threatened", "Tooke's acts and other State of ND responses", "'unwitting dupes' and agents… and officials from other agencies", "BND", "NDDF", "Tuttle", "NDDF subordinates", "Michael Standaert", "BEK TV and BEK Communications CEO Derrick Bulawa").

direct responsibility for" any violations, there can be no "cognizable" Section 1983 claim. *Coffman v. Nixon*, 126 Fed. Appx. 340, *1 (8th Cir. 2005).

[¶11]    Throughout the Complaint, Plaintiffs either lump the Defendants together and refer to them in the collective or make broad conclusory allegations about their alleged agreement or participation without identifying the actual conduct or action of the individual Defendant; thus, failing to specify which individual Defendant did what. *Cole v. Does*, 571 F. Supp. 3d 1033, 1042 ("'Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'") (*quoting Iqbal*, 556 U.S. at 676). Even if Plaintiff's Complaint met pleading standards to establish each individual Defendant committed conduct that violated the constitution, Plaintiffs' claims are still futile because the Defendants are entitled to qualified immunity.

## II.    Legal standards applicable to qualified immunity.

[¶12]    "Qualified immunity is an immunity from suit rather than a mere defense to liability." *Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (quotations omitted). "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id*. at 231.

[¶13]    When a defendant raises qualified immunity, courts analyze two prongs. *Wagner v. Jones*, 664 F.3d 259, 268 (8th Cir. 2011). "To overcome the defendants' qualified immunity claims, the plaintiffs must show that: (1) the facts, viewed in the light most favorable to the plaintiffs, demonstrate the deprivation of a constitutional right; and (2) the right was clearly established at the time of the deprivation." *Baribeau v. City of Minneapolis*, 596 F.3d 465, 474 (8th Cir. 2010) (citation modified); *see also Davis v. Scherer*, 468 U.S. 183, 197 (1984) (A plaintiff is burdened with overcoming qualified immunity). Qualified immunity has broad application:

> Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. While this Court's case law does not require a case directly on point for a right to be clearly established, existing precedent must have placed the

> statutory or constitutional question beyond debate. In other words, immunity
> protects all but the plainly incompetent or those who knowingly violate the law.

*White v. Pauly*, 580 U.S. 73, 78-79 (2017) (citation modified). Furthermore, the "longstanding

principle" requiring the law to be clearly established "should not be defined at a high level of

generality [but rather] must be particularized to the facts of the case." *Id*. at 79 (citation modified).

Otherwise, "[p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of

virtual unqualified liability simply by alleging violation of extremely abstract rights." *Anderson v.

Creighton*, 483 U.S. 635, 639 (1987). Qualified immunity applies when a plaintiff has "failed to

identify a case where [a government official] acting under similar circumstances. . . was held to

have violated the [Constitution]." *White*, 580 U.S. at 79. Cases that "present[] a unique set of facts

and circumstances . . . should be an important indication . . . that an official's conduct did not

violate a clearly established right." *Id*. (citation modified). "[B]are allegations of malice" are

simply not sufficient. *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998) (*citing Harlow v.

Fitzgerald*, 457 U.S. 800, 817-18 (1982)). Courts may only apply an objective standard to qualified

immunity, and evidence of subjective intent is "irrelevant." *Crawford-El*, 523 U.S. at 588 (*citing

Harlow*, 457 U.S. at 817-18). That is to say, evidence that a defendant's actions were "malicious

or otherwise improperly motivated" is irrelevant.

[¶14]  Last, despite the possible difficulty of conducting a qualified immunity analysis,

particularly when as here the Plaintiffs' Complaint is so conclusory in nature and lacks specific

factual allegations as to each individual defendant's conduct or action, the Court is nevertheless

obligated to address the defense when raised in a motion to dismiss. *See Payne v. Britten*, 749 F.3d

697, 702 (8th Cir. 2014) ("The defendants in this case, like any public officials, are entitled to a

reasoned denial or grant of their claim of qualified immunity at the motion to dismiss stage . . . .

[T]he district court may not force public officials into subsequent stages of district court litigation

without first ruling on a properly presented motion to dismiss asserting the defense of qualified

immunity."); *see also Pearson v. Callahan*, 555 U.S. at 231 (noting that qualified immunity

defenses should be addressed "prior to discovery"); *Ferguson v. Short*, 840 F.3d 508, 511 (8th Cir.

2016) ("Courts must resolve the matter of qualified immunity as soon as possible or the party claiming it will be deprived of its benefit – immunity from suit.").

[¶15]   Here, Plaintiffs have not demonstrated, with "particularized" facts, that each Defendant based on his own actions, violated Plaintiffs' clearly established federally protected rights. *White*, 580 U.S. at 79. Even more, the Plaintiffs will not be able to identify a case where an individual defendant has acted under similar circumstances to those alleged here and was held to have violated the constitution so as to put the statutory or constitutional question beyond debate to overcome the Defendants' entitlement to qualified immunity.

**III.    This Court must dismiss Count I Plaintiffs' Equal Protection "class of one" claim.**

[¶16]   The Equal Protection Clause of the United States Constitution provides that the states shall not deprive any person of "the equal protection of the laws." U.S. Const. amend. XIV, § 1. To successfully plead a class of one claim, plaintiffs must, at a minimum, plead that they have "been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Specifically, plaintiffs must show that they were treated "*less favorably* than others" who are similarly situated. *Bruning v. City of Omaha, Nebraska*, 6 F.4th 821, 825 (8th Cir. 2021) (emphasis added).

[¶17]   First, plaintiffs must successfully allege that "the persons alleged to have been treated more favorably must be identical or directly comparable to the plaintiff in *all material respects*." *Sanimax USA, LLC v. City of S. St. Paul*, 95 F.4th 551, 564 (8th Cir. 2024). "Absent such a showing, a class-of-one claim must fail." *Id*. "Any material difference between how the plaintiff and those allegedly treated more favorably are situated is sufficient to provide a rational basis for the differential treatment." *Bruning*, 6 F.4th at 825. In *Bruning*, Plaintiffs claimed they were treated worse than other property owners, but their class of one claim failed because they made no showing at all "that they were 'identical or directly comparable'" to the other property owners. *Id*.

[¶18]   Second, Plaintiffs must successfully plead factual support for how the identified similarly situated individuals "allegedly received preferential treatment." *Robbins v. Becker*, 794 F.3d 988,

996 (8th Cir. 2015). Without this element, a class of one claim cannot survive. *Id*.; *see also Mensie v. City of Little Rock*, 917 F.3d 685, 692-93 (8th Cir. 2019). "Identifying the disparity in treatment" between the plaintiff and others in a class is necessary. *Robbins,* at 996. "A class-of-one plaintiff must therefore provide a specific and detailed account of the nature of the preferred treatment of the favored class, especially when the state actors exercise broad discretion to balance a number of legitimate considerations." *Id*. at 996 (quotations omitted).

[¶19]   Here, Plaintiffs have totally failed to demonstrate either of these elements. Plaintiffs allege that they "were similarly situated to other North Dakotans, including without limitation those doing business with ND Commerce and NDDF in the State of North Dakota." Doc. No. 1 at ¶ 973. "Despite being similarly situated, Defendants intentionally treated Plaintiffs differently from others similarly situated and there was no rational basis for the difference in treatment." *Id*. at ¶ 974. "Each Defendant singled out the Plaintiffs for discriminatory treatment on an irrational and wholly arbitrary and capricious basis." *Id*. at ¶ 975. "All other similarly situated to Plaintiffs were treated more favorably." *Id*. at ¶ 977.

[¶20]   These allegations are insufficient and fail to identify an identical or similarly situated comparator in all material respects; rather, Plaintiffs' Complaint broadly alleges that everyone else in the State of North Dakota was treated differently—such an allegation is insufficient to establish the necessary element for an equal protection class of one claim. The Complaint fails to plead specifically the actions of each individual Defendant that are considered to have intentionally treated Plaintiffs differently or how each individual Defendant acted towards all others in the State of North Dakota. *See Stark*, 717 F.2d at 1552 (general and conclusory allegations that lack specific facts supporting its conclusions are insufficient). There is not a single factual allegation in the Complaint from which this Court could discern that each individual Defendant committed acts that would amount to a plausible violation of Plaintiffs' equal protection rights by each individual Defendant; this is necessary for Section 1983. The Complaint fails to specifically detail how each individual defendant engaged in conduct or made a decision that resulted in constitutionally actionable disparate treatment between similarly situated individuals that was arbitrary or

irrational. Looking at the specific allegations Plaintiff pleads under the Equal Protection claim (Doc. No. 1 at ¶¶ 966-1013), the Defendants are largely grouped together or the allegations are conclusory in nature and do not allege actual conduct or decision making of each individual Defendant that would plausibly show each individual Defendant, through his own actions, violated the constitution. A plaintiff has the burden in bringing a Section 1983 claim against government officials to do so. *Iqbal*, 556 U.S. at 676. Moreover, the mere fact that the Complaint contains the word "conspiring," Doc. No. 1. at ¶ 971, does not resurrect this claim. *Brewster v. Nassau Cnty.*, 349 F. Supp. 2d 540, 547 (E.D.N.Y. 2004).

[¶21]   The class of one theory simply does not apply to all situations, particularly where broad discretion is exercised over a multitude of factors that naturally lead to differences in treatment. For example, it does not apply to employment contexts. *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 605 (2008) ("To treat employees differently is not to classify them in a way that raises equal protection concerns." "Rather, it is simply to exercise the broad discretion that typically characterizes the employer-employee relationship."). Nor does it apply to prosecutorial and sentencing decisions. *Del Marcelle v. Brown Cnty. Corp.*, 680 F.3d 887, 897-98 (7th Cir. 2012) ("There is arbitrary variance among prosecutors in deciding whether to prosecute a particular criminal, and among judges in deciding what sentence to impose on a particular criminal[.]" "[T]here are also inconsistent prosecutorial decisions by individual prosecutors within a department and inconsistent sentences imposed by individual judges within a judicial system and indeed in the same court."). Although there is a complete absence of factual support for Plaintiff's Complaints, none of the actions or decisions made by any named Defendant, occurring over a long period of time, can fairly be reviewed under a class of one theory. The class of one claim must be dismissed.

## A.   Defendants are entitled to qualified immunity.

[¶22]   Last, even if Plaintiffs state an Equal Protection class of one claim, they cannot demonstrate that the proffered violation was clearly established at the level of specificity required for purposes of qualified immunity. "If case law, in factual terms, has not staked out a bright line, qualified

immunity almost always protects the defendant." *Lassiter v. Alabama A & M Univ.*, 28 F.3d 1146, 1150 (11th Cir. 1994) (quoting *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1557 (11th Cir. 1993)). Plaintiffs fail to allege the exact conduct that each individual Defendant committed to establish a violation to overcome qualified immunity. They cannot identify prior cases similar to the unique circumstances here—outlined in a 244-page Complaint that would have put every reasonable public official on notice that they were violating the Equal Protection Clause. When viewing the Complaint as a whole, it is difficult to ascertain what specific conduct supports Plaintiffs claim of an equal protection violation under a class of one theory, given the Complaint's broad and conclusory allegations, that would illustrate Plaintiffs had a clearly established constitutional right. But even looking at the specific allegations Plaintiffs plead in support of the Equal Protection claim, Plaintiffs will not be able to identify a body of law that clearly establishes the alleged conduct, even if it is determined to meet pleading standards for Section 1983 purposes, would result in a violation of the equal protection clause under a class of one theory. *See* Doc. No. 1 at ¶¶ 966-1013.

[¶23]   For instance, Plaintiff identifies as "some of the more notably spiteful and arbitrary 'class-of-one' treatments" that Defendants Teigen, Garman, Akason, and Lehman directed Plaintiffs' business affairs; controlled who plaintiff Hoefer could and could not speak with and the content of those communications; made false reports, concealed, covered up, and hid material facts from law enforcement; encumbered Plaintiffs' property; stopped a private mortgage; directed Plaintiffs to hire a conflicted lawyer; obtained plaintiff Hoefer's forced labor; misled and deceived Plaintiffs concerning the existence of "Commerce Factory-related public records"; forced plaintiff Hoefer to report crimes slowly; shut down plaintiff Hoefer's RV training program; and obtained plaintiff Hoefer's forced labor. Doc. No. 1 at ¶ 992. First, none of these allegations identify what actions or communications each individual Defendant specifically engaged in or took to establish personal liability under Section 1983 and each individual defendant is entitled to qualified immunity on that basis alone. The allegations also fail to specify how each of the individual Defendants purported to provide preferential treatment to someone who was similarly situated to Plaintiffs. *Robbins,* at

996 ("A class-of-one plaintiff must therefore provide a specific and detailed account of the nature of the preferred treatment of the favored class, especially when the state actors exercise broad discretion to balance a number of legitimate considerations.") (quotations omitted).

[¶24]   But also, none of the alleged "actions" are such that there is case law factually establishing a bright line that would fairly place the individual Defendants, let alone a reasonable person, on notice that such actions constituted class on one treatment and would violate Plaintiffs' right to equal protection. *Pearson*, 555 U.S. at 231 ("The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."). Defendants are entitled to qualified immunity with respect to Plaintiffs' claim of an equal protection violation and dismissal of this claim.

[¶25]   Importantly, subjective motivation is irrelevant, and allegations of impermissible motivation cannot defeat qualified immunity. Rather the inquiry remains an objective one, asking whether it would have been obvious to the named defendants, without reference to motivation, that they violated Plaintiffs' right to Equal Protection. No such body of law exists. Therefore, Defendants are entitled to qualified immunity.

### IV.    This Court must dismiss Count II Plaintiffs' First Amendment retaliation, suppression, chilling of exercise of protected free speech rights, and right of petition claims.

[¶26]   "When the government takes adverse action against a public employee, an independent contractor, or another actor with whom the government has a comparable pre-existing commercial relationship, the First Amendment is implicated only when the speech or petition that motivated the retaliation involves matters of public concern." *L.L. Nelson Enterprises, Inc. v. Cnty. of St. Louis, Mo.*, 673 F3d 799, 808 (8th Cir. 2012); *see also Bd. Of Cnty. Comm'rs, Wabaunsee, Kansas, v. Umbehr*, 518 U.S. 668 (declining to address viability of First Amendment claim by contractor without preexisting commercial relationship). The Plaintiffs' commercial relationship with the state of North Dakota is outlined in the Complaint and there are no First Amendment allegations involving the State as sovereign outside of that relationship. Therefore, Plaintiffs must establish:

"(1) it engaged in expressive conduct that addressed a matter of public concern; (2) the government officials took an adverse action against it; and (3) its expressive conduct was a substantial or motivating factor for the adverse action." *Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917, 923 (9th Cir. 2004).

[¶27]   Speech involves a matter of public concern when it "relat[es] to any matter of political, social, or other concern to the community," *Connick v. Myers*, 461 U.S. 138, 146 (1983). However, when an individual speaks upon matters of personal interest, the fact that the content may be of general interest to the public is not sufficient. An individual must be speaking as a citizen on a matter of public concern, and the mere fact that the content may be of general interest cannot transform speech on matters of private interest into a constitutional question. *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749 (1985) (Holding, in the context of a state defamation claim, a petitioner's credit report is not speech on a matter of public concern, it does not concern a public issue, and is "speech solely in the individual interest of the speaker and its specific business audience."); *Houskins v. Sheahan*, 549 F.3d 480 (7th Cir. 2008) (Police report "serves a private or personal interest, as opposed to a public one, [and therefore] does not satisfy the standards for First Amendment protections."); *Padilla v. S. Harrison Sch. Dist.*, 181 F.3d 992 (8th Cir. 1999) (compelled trial testimony not speech on a matter of public concern and therefore not entitled to First Amendment protection); *Butler v. Bd. Of Cnty. Comm for San Miguel Cnty.*, 920 F.3d 651 (10th Cir. 2019) (rejecting per se rule that sworn testimony is matter of public concern instead reviewing on a case-by-case basis the content, form and context of specific speech at issue). In determining whether speech is of public concern, a court must carefully look at the factual content, form, and context of the speech.

[¶28]   Here there are no factual allegations of the content, form, and context of the speech. Rather, Plaintiffs simply state: "The Plaintiffs' speech and conduct . . . was protected under the First Amendment." *Id.* at ¶ 1021. This is not sufficient. Even parsing through the more than one thousand preceding paragraphs, there are no alleged facts of specific speech, the circumstances of the speech, its purpose, to whom it was made and for what purpose and who was aware of the

content of the speech. Plaintiffs allege they found and reported potential criminality to federal authorities and claim to be "whistleblowers" and "witnesses" as a result, but the necessary circumstances to properly evaluate whether a violation of the First Amendment is alleged and whether the circumstances are similar to established law such that qualified immunity can be evaluated at the required level of specificity required is absent. Plaintiffs allege they petitioned state and federal authorities for redress, but again, without any necessary context or specific factual assertions under which the claim of protected speech and qualified immunity can even be evaluated. *Borough of Duryea, Pa., v. Guarnieri*, 564 U.S. 379 (2011) (petition clause subject to public concern limitation); *Valot v. Se. Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1226 (6th Cir. 1997) ("the right to petition is limited to matters of public concern.").

[¶29]    Similarly, they fail to allege actual facts supporting a cognizable adverse government action. In conclusory fashion, Plaintiffs simply allege "all defendants" cut off communications, invented and spread unknown false allegations to unnamed individuals, cut off unknown benefits and incentives, falsely alleged plaintiff Hoefer was threatening to sue, investigated and sought law enforcement to investigate Hoefer's actions, threatened and made false statements in an attempt to influence banks and private financing, and attempted to have Hoefer perjure himself.  None of the conclusory assertions is sufficient to clearly allege an adverse action. *See Moore v. Garnand*, 83 F.4th 743, 752 (Retaliatory criticisms, investigations, and false allegations alone are not actionable adverse actions.); *McNeally v. Home Town Bank*, 725 F.Supp.3d 934 (D. Minn. 2024) (general statements, devoid of specificity and context, that are perceived as threatening are not actionable adverse actions); *Mezibov v. Allen*, 411 F.3d 712 (6th Cir. 2005) (public employees right of response cannot be adverse action); *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 687 (4th Cir. 2000) (given a public official's job duties of ensuring proper use of public funds and their own First Amendment rights, retaliation "in the nature of speech, in the absence of a threat, coercion, or intimidation intimating that punishment, sanction, or adverse regulatory action will imminently follow, such speech does not adversely affect a citizen's First Amendment rights, even if defamatory."). Plaintiff's conclusory allegations that all defendants were motivated and intended

14

to retaliate, suppress and chill speech, or that Plaintiffs subjectively felt intimidated, is inadequate. Plaintiffs have failed to allege how each individual Defendant took an adverse action that would support a First Amendment claim.

[¶30]  Finally, Plaintiffs fail to allege any causal connection between the conclusory adverse actions and any claimed protected speech or activity. There certainly is nothing alleged in the Complaint that directly requires a conclusion that a challenged action was taken by a particular individual Defendant due to protected speech. Further, there are no alleged facts from which it could be demonstrated any of the Defendants took a specific action as a result of protected activity through reasonable inferences drawn from specific alleged facts. "Plaintiffs' statement that protected activities were a substantial and motivating factor in the Defendants' conduct" is simply not sufficient. *Id.* at ¶ 1023.

### A.    Defendants are entitled to qualified immunity.

[¶31]  But even if one assumes Plaintiffs have alleged a plausible First Amendment claim, Defendants are entitled to qualified immunity based upon the complete failure to identify each individual Defendants personal participation in the alleged deprivation and the lack of clearly established law that would have put all reasonable officials on notice that what has been alleged was a clear violation of the First Amendment.

[¶32]  "General propositions have little to do with the concept of qualified immunity." *Lassiter v. Alabama A & M Univ.*, 28 F.3d 1146, 1150 (11th Cir. 1994) (quoting *Muhammad v. Wainwright*, 839 F.2d 1422, 1424 (11th Cir. 1987)). "If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Id*. at 1150 (quoting *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1557 (11th Cir. 1993). Further, where the relevant inquiry is fact intensive and ultimately rests on competing interest, it can only rarely be said to be clearly established. *See Foy v. Holston*, 94 F.3d 1528, 1535 (11th Cir. 1996).

[¶33]  In this case, Plaintiffs must demonstrate that each Defendant personally took a clearly established adverse action against each Plaintiff for clearly established protected First Amendment activity, with facts alleged that could reasonably prove they were causally connected. Plaintiffs

simply cannot do so given that the Complaint is largely devoid of actual factual allegation as opposed to broad conclusory assertions, and the uniqueness of the relationship between the State and Plaintiffs over an extended period of time as outlined in the Complaint. Defendants are each entitled to qualified immunity on Plaintiffs First Amendment claim.

**V.    This Court must dismiss Count III: a 42 U.S.C. § 1983 claim alleging that Plaintiffs' rights under the Fourteenth Amendment's Equal Protection Clause was violated through discriminatory treatment of a member of a protected class.**

[¶34]    Plaintiffs fail to properly allege that they are members of a "protected class," or sufficiently identify how Defendants violated their federal rights. Therefore, Defendants are entitled to dismissal on Count III.

[¶35]    The Supreme Court has identified several classes that are clearly "protected." *See Graham v. Richardson*, 403 U.S. 365, 372 (1971). The Plaintiffs' class is not one of them. *Id*. When it is not clear whether a class is a protected class, the federal judiciary uses two main factors to determine this issue. *Kerrigan v. Comm'r of Pub. Health*, 957 A.2d 407, 427 (Conn. 2008). Such factors are (1) bearing immutable characteristics and (2) being a discrete and insular minority. *Id*.

[¶36]    If a class has "immutable characteristics," it favors being a protected class. *Frontiero v. Richardson*, 411 U.S. 677, 686 (1973). A class is immutable when it has a "highly visible characteristic" that makes a class member obvious in society, like sex, race, and national origin. *Id*. Immutable characteristics are "solely by the accident of birth." *Id*.

[¶37]    The same can be said for a class that is a "discrete and insular minorit[y]." *United States v. Carolene Products Co.*, 304 U.S. 144, 153 n.4 (1938). Classes only qualify for this factor if they have been "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 28 (1973). Examples of these classifications are nationality, race, and aliens. *Graham v. Richardson*, 403 U.S. at 372.

[¶38]    Plaintiffs allege that they are members of a protected class because they are "witnesses, victims, and informants who have provided information to law enforcement for federal

investigations". Doc. No. 1 at ¶ 1050. They site 18 U.S.C § 1513(e) to support this proposition. But it is clear these statutory provisions do not give rise to a private right of action. *Daramola v. Dungarvin Incorporated*, 2025 WL 607256 (D. Minn. Feb. 25, 2025); *Abou-Hussein v. Mabus*, 953 F. Supp. 2d 251, 262 n.5 (D.D.C. 2013) ("[T]o the extent that the plaintiff intends to raise a claim pursuant to [18 U.S.C. § 1513] , such a claim cannot be maintained."); *Ghost Bear v. South Dakota Dep't of Corr.*, No. 11-cv-5051, 2011 WL 3608569, at *2 (D.S.D. 2011) (stating there is no private right of redress or private suit for a violation of 18 U.S.C. § 1513; *Shahin v. Darling*, 606 F. Supp. 2d 525, 538–39 (D. Del.) (recognizing no private right of action under 18 U.S.C. §§ 1512, 1513), *aff'd*, 350 F. App'x 605 (3d Cir. 2009) (per curiam).

[¶39]   18 U.S.C § 1513(e) provides a penalty for retaliating or harming a witness, victim, or an informant. In no way does it create a "protected class," and the assertion that it does is clearly wrong. *Hurt v. Smith*, No. 1:09-CV-698, 2010 WL 3034520, at *2 (E.D. Cal. Aug 2, 2010) ("The Court is unaware of, and plaintiff does not cite, legal authority for treating informants as a protected class for constitutional purposes."); *Evans v. Cnty. of Los Angles*, 529 F.Supp.3d 1082, 1092 (C.D. Ca. 2021) ("The court is not aware of any legal authority that establishes [being charged with a crime and later acquitted] as a protected class for equal protection purposes."); *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005) ("Mere indifference to the effects of a decision on a particular class does not give rise to an equal protection claim").

[¶40]   Furthermore, Plaintiffs do not allege how witnesses, informants, and victims, even those associated with the particular matter described in the Complaint, have been subjected to disparate regulatory treatment. Plaintiffs essentially do nothing more than attempt to recast their improper class of one claim.

[¶41]   The outcome is the same even if the Plaintiffs' Fourteenth Amendment claim is viewed under a discriminatory enforcement theory. Plaintiffs allege the Defendants subjected Plaintiffs to differential treatment and Defendants "acted against Plaintiffs with a discriminatory purpose and intent and treated the Plaintiffs differently" because of Plaintiffs' status as victims, witnesses, and

informants. Doc. No. 1 at ¶¶ 1060 – 1063, 1067. Plaintiffs, however, fail to articulate a similarly situated individual which is required for claims under the Equal Protection Clause and Section 1983. *See Blue Mint Pharmco, LLC v. Texas State Bd. of Pharmacy*, 667 F. Supp. 3d 473, 492 (S.D. Tex. 2023) (Noting for claims under both a class of one or discriminatory enforcement "being similarly situated is key. Because the clause's protection reaches only dissimilar treatment among similar people . . . ."). In *Blue Mint Pharmco, LLC*, the court dismissed the plaintiff's equal protection claim alleging discriminatory enforcement based on race where the plaintiff failed to "specifically identify any similarly situated comparators in its complaint" and it made only broad, general allegations of discriminatory treatment. *Id*. The court held that such allegations did not overcome the individual defendant board members' qualified immunity. *Id*. The same is true here.

[¶42]   Plaintiffs are burdened with providing sufficient factual allegations "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct." *Iqbal*, 556 U.S. at 678.   Plaintiffs have not pointed to a single factual allegation that demonstrates that each individual Defendant through his specific actions engaged in discriminatory enforcement under the Fourteenth Amendment or how each individual Defendant acted with discriminatory intent. Last, Plaintiffs' allegations, like those in *Blue Mint Pharmco, LLC*, fail to identify a similarly situated comparator to establish a violation of Plaintiffs' rights under the Equal Protection Clause. *See Williams v. Wyrick*, 664 F.2d 193, 194 (8th Cir. 1981) ("The fourteenth amendment does not require absolute equality or precisely equal advantages, as long as the differences do not amount to a denial of due process or an invidious discrimination."). The mere fact that the Complaint contains the word "conspiring," Doc. No. 1 at ¶ 1067, does not resurrect this claim. *Brewster*, 349 F. Supp. 2d at 547. Regardless, Plaintiffs' claims would fail rational review. *Shallowhorn*, 572 Fed. Appx. at 547.

### A.    Defendants are entitled to qualified immunity.

[¶43]   Even if Plaintiffs state an Equal Protection Clause claim, they cannot demonstrate that the proffered violation was clearly established at the level of specificity required for purposes of qualified immunity. Again, Plaintiffs alleged protected class is that of "witnesses, victims, and

informants who have provided information to law enforcement for federal investigations." Doc. No. 1 at ¶ 1050. But Plaintiffs will not be able to point to any body of case law that clearly establishes being a victim, witness, or informant is a protected class recognized under the Fourteenth Amendment or that it is a protected category such that treating an individual differently based on that classification would run afoul of the Fourteenth Amendment because such a classification is considered an immutable characteristic or an invidious basis of classification. In fact, with respect to informants, authority suggests just the opposite meaning it is not clearly established and qualified immunity must apply. *Hurt v. Smith*, No. 1:09-CV-698, 2010 WL 3034520, at *2 (E.D. Cal. Aug 2, 2010) ("The Court is unaware of, and plaintiff does not cite, legal authority for treating informants as a protected class for constitutional purposes."). To be sure, being a witness or victim is not an immutable characteristic nor can it be said to be a characteristic that is discrete or insular minority. *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 28 (1973). Simply, it is not beyond debate and therefore Plaintiffs cannot overcome the Defendants entitlement to qualified immunity and this claim must be dismissed.

## VI. This Court must dismiss Count IV: a 42 U.S.C. § 1983 claim alleging that Plaintiffs' procedural due process rights were deprived in violation of the Fourteenth Amendment of the United States Constitution.

[¶44] The due process clause does not prohibit erroneous or even wrongful deprivations of property or liberty. Rather, it demands certain governmental processes to address those possibilities. However, not every private interest is constitutionally protected as property or liberty. Property protected by the due process clause only includes those interests for which one has a prior legitimate legal entitlement. *The Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 570 (1972). Further, reputational interests in one's good name alone is not sufficient to state a liberty interest. *Hinkle*, 793 F.3d at 770 (quoting *Townsend v. Vallas*, 256 F.3d 661, 670 (7th Cir. 2001) ("Defamation alone, even if it renders it 'virtually impossible for the [individual] to find new employment in his chosen field,' . . . is not enough to invoke the procedural safeguards of the Fourteenth Amendment.")

[¶45]   Procedural due process claims are also unique in that only the governmental entity itself can provide the necessary process commanded by due process constraints.  It is for this reason that negligent or intentional interference with property or liberty interests by a state official does not state a procedural due process claim unless and until the State refuses to provide a remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981); *Zinermon v. Burch*, 494 U.S. 113, 130 (1990) ("This is where the *Parratt* rule comes into play. *Parratt* and *Hudson* represent a special case of the general *Mathews v. Eldridge* analysis, in which post deprivation tort remedies are all the process that is due, simply because they are the only remedies the State could be expected to provide."). Available post deprivation remedies include remedies available under state tort law, and such process must be followed to conclusion before attacking them in court. *Wax 'n Works v. City of St. Paul*, 213 F.3d 1016, 1019 (8th Cir. 2000); *Hellenic American Neighborhood Action Committee v. New York*, 101 F.3d 877 (2nd Cir. 1996).

[¶46]   In this case, Plaintiffs do not allege they had a legitimate entitlement to any property that was taken pursuant to constitutionally inadequate process. At most, Plaintiffs allege in conclusory fashion that they were defamed and were financially harmed as a result. This is not sufficient. Plaintiffs assert a right to a name clearing hearing but do not allege any legally protected status that was changed in conjunction with specific alleged defamatory communications. Although Plaintiffs allege in conclusory fashion that Defendants engaged in defamation and other wrongful acts, nothing suggests the State would be in a clear position to provide process prior to such actions occurring. *Hellenic American Neighborhood Action Committee v. New York*, 101 F.3d 877 (2nd Cir. 1996). Whether Defendants defamed and impacted Plaintiffs' business interests or not, Plaintiffs cannot make out a procedural due process claim having not availed themselves of available state remedies. *Krentz v. Roberts*, 228 F.3d 897, 902 (8th Cir. 2000); *Hopkins v. City of Bloomington*, 774 F.3d 490 (8th Cir. 2014).

### A.   Defendants are entitled to qualified immunity.

[¶47]   Finally, even assuming a viable alleged procedural due process claim is made, Defendants remain entitled to qualified immunity. Qualified immunity protects all but the truly incompetent who

20

violate clearly established law. The right to additional procedural protections to the conclusory claims made by Plaintiffs in this case could hardly be characterized as clearly established. Because of the nature of the constitutional protection at issue, qualified immunity almost always protects a public official from procedural due process claims. What is strictly and absolutely required under the unique circumstances facing the public official is almost never clearly established. As the Ninth Circuit explained:

> While the right to due process is "clearly established" by the Due Process Clause, this level of generality was not intended to satisfy the qualified immunity standard. Rather, courts must look to the *Mathews* test. And . . . because procedural due process analysis essentially boils down to an ad hoc balancing inquiry, the law regarding procedural due process claims can rarely be considered 'clearly established' at least in the absence of closely corresponding factual and legal precedent. Indeed, without specific direction from cases applying it, the *Mathews* standard is perhaps even less amenable to the discovery of clearly established law than are the *Pickering* test and other multifactor balancing tests that arise in constitutional jurisprudence. Not only does the *Mathews* inquiry require a delicate balancing of several competing interests, it requires that balancing at several separate stages of the procedural due process calculus. * * * The result of combining the *Mathews* test's ambiguity with its ubiquity is unsurprising: One cannot accurately predict how any specific case will be decided.

*Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 983-84 (9th Cir. 1998). The inability to even predict how a procedural due process claim may be decided by lawyers and learned judges makes the situation faced by public officials untenable. It is for this very reason that qualified immunity must apply.

[¶48]   It is not clearly established that a name clearing hearing would have been required even considering the allegations Plaintiffs do put forth. Plaintiffs allege a name clearing hearing should have been provided to restore their reputation because Plaintiffs were allegedly accused of misusing capital provided by the Fund and an audit was performed and is still ongoing. Plaintiffs allege the misuse allegations were repeated by Defendants to North Dakota state legislators, and others, and such actions deprived Plaintiffs of their liberty rights. Doc. No. 1 at ¶ 1110. But the due process clause under the Fourteenth Amendment extends to deprivation of liberty claims where, based on a government statement, there is a "stigma-plus" where a plaintiff must show that in conjunction with

a stigmatizing statement there is a denial of some tangible interest such as "the alteration of a right or status recognized by state law." *Woodley v. City of Portland*, 641 F. Supp. 3d 939, 944 (D. Or. 2022).

[¶49]   Name clearing hearings have been found to be required under the stigma-plus test in circumstances where in addition to a stigmatizing statement, a plaintiff loses government employment to satisfy the alteration of a right or status. But where a plaintiff complains that statements resulted in reputational harm or harm to his business, such allegations have been held to not fall under the Fourteenth Amendment's reach requiring due process. *Sadallah v. City of Utica*, 383 F.3d 34, 38-39 (2d Cir. 2004) (holding plaintiff's claims failed under the stigma-plus test  because there was an absence of additional state-imposed burden). In *Sadallah*, plaintiffs leased property from the city and city officials made defamatory statements about building and health code violations, made baseless complaints to the health department, and used the public authority and status of the city to disseminate defamatory information to the press about plaintiff's business. *Id.* at 36. Plaintiff brought suit against the city and the mayor under Section 1983 alleging a violation of plaintiff's right to due process under the Fourteenth Amendment prior to a deprivation of its liberty or property interest, asserting the statements by the mayor caused reputational damage, irreparable financial harm to the business, and discouraged patrons from its building. *Id.* at 36, 38. The Second Circuit held the mayor was entitled to qualified immunity on plaintiff's claim because there was not an additional deprivation of legal right or status, such as the revocation of plaintiff's lease. *Id.* at 39. *Sadallah* further explained that when considering the stigma-plus test, "deleterious effects flowing directly from a sullied reputation, standing alone, do not constitute a 'plus' under the 'stigma plus' doctrine." *Id.* at 38 (cleaned up).

[¶50]   Plaintiffs Complaint is devoid of any allegations specific to each individual Defendant that would demonstrate each individual Defendant's conduct or action deprived Plaintiffs of some legal right or status and mere claims of economic harm or damage are not enough to state a federal constitutional claim. Because this is not a clearly established right, Defendants are entitled to qualified immunity. *See WMX Techs., Inc. v. Miller*, 197 F.3d 367, 376 (9th Cir. 1999) (alleged defamatory remarks made to public generally that could affect plaintiff's business reputation does not satisfy requirement that a constitutionally protected property interest is at stake); *Paul v. Davis*, 424 U.S.693

(1976) (reputation alone does not implicate a liberty or property interest subject to protection by procedural due process).

[¶51]    Even considering Plaintiffs' allegations relative to the Fund's restriction on credit line draws and reimbursements, such allegations do not identify any specific individual Defendant who is responsible for this conduct. But even if such allegations were sufficient to state a claim against each individual defendant under Section 1983, it would still fail because it is clearly established that a plaintiff does not have a constitutionally protected property interest subject to due process protections for discretionary benefits "'a benefit is not a protected entitlement if government officials may grant or deny it in their discretion.'" *Ferrone v. Onorato*, 298 Fed. App'x. 138, 140 (3d Cir. 2008) (quoting *Town of Castle Rock v. Gonzales,* 545 U.S. 748, 756 (2005)). Plaintiffs' allegations relative to how financing or the like was handled by the board of the Fund, who by statute controls the Fund and its obligations, cannot be broadly attributed to be the conduct or acts of the individual Defendants to establish individual liability under Section 1983. Nor could Plaintiffs overcome Defendants entitlement to qualified immunity because liability under Section 1983 is personal – it must be evaluated based on the specific conduct or actions of the individual. Such a standard is not met.

[¶52]    In addition, Plaintiffs cannot show that each individual Defendant's personal participation caused the constitutional deprivation. There are no allegations that any individual Defendant controlled or was responsible for State established procedures. An individually named defendant cannot simply be lumped together with other defendants or other state actors. *Sommer v. Dixon*, 709 F.2d 173, 174-75 (2nd Cir. 1983) (action for alleged procedural errors cannot be brought against individual for allegedly providing inaccurate or false report).

## VII.    This Court must dismiss Count V: a 42 U.S.C. § 1983 claim alleging that Plaintiffs' substantive due process rights were deprived in violation of the Fourteenth Amendment of the United States Constitution.

[¶53]    Plaintiffs' substantive due process claims are equally unavailing. "Substantive due process is generally limited to matters relating to a fundamental right, *i.e.*, marriage, family, procreation, right to bodily integrity." *Peterson v. N.D. ex rel. N.D. Univ. Sys.*, 240 F. Supp. 2d 1055, 1062 (D.N.D. 2003). Freedom from defamation or reputational harm alone is outside the protections

afforded by substantive due process. *Paul v. Davis*, 424 U.S. at 713. Substantive due process protects against governmental actions, not every alleged bad act of a government official. *Weimer v. Amen*, 870 F.2d 1400, 1406 (8th Cir. 1989). Unauthorized deprivations for purposes of *Parratt/Hudson*, do not become actionable under Section 1983 merely by characterizing them as arbitrary, capricious, or shocking the conscience. *Ali v. Ramsdell,* 423 F.3d 810, 814 (8th Cir. 2005). In addition, alleged bad faith violations of state law remain merely violations of state law and do not give rise to substantive due process claims. *See Chesterfield Dev. Corp. v. City of Chesterfield*, 963 F.2d 1102 (8th Cir. 1992).

[¶54]   Therefore, to state a substantive due process claim, there must be facts alleged demonstrating truly conscience shocking actions **and** that those acts resulted in a deprivation of a life, liberty, or property interest recognized as being protected by the due process clause. *Tobin v. Badamo,* No. 3:00CV783, 2000 WL 1880262, at *4 (M.D.Pa. Dec. 20, 2000). Plaintiffs have done neither in this case. Plaintiffs' reputation alone is not a protected liberty interest and there are no allegations of any property interest that was taken.

[¶55]   Further, other than conclusory assertions, there are simply no facts alleged which fairly could be said to be conscience shocking as understood for substantive due process. *See Mertik v. Blalock*, 983 F.2d 1353, 1367-68 (6th Cir. 1993) (banning coach from city ice rink and publishing to third parties false statements that coach was sexually abusing minor students did not rise to conduct that shocked the court's conscience); *Cruz–Erazo v. Rivera–Montañez*, 212 F.3d 617, 621-24 (1st Cir. 2000) (affirming dismissal of substantive due process claim where the plaintiffs alleged that police officers deliberately lied in official documents and perjured themselves in court proceedings, off-duty police officers' harassment of plaintiffs, destruction of their personal property, pushing of their pregnant daughter (who subsequently miscarried), initiation of false charges against plaintiffs, and lying to a court did not give rise to substantive due process claims) (abrogated on other grounds as recognized by, *Maldonado-González*, __ F.4th __ (1st Cir. 2025)); *McGrath v. Town of Sandwich*, 22 F. Supp. 3d 58, 62-63, 68 (D. Mass. 2014) (dismissing substantive due process claim where a school resource officer allegedly lied about seeing

photographs of injuries a student inflicted on another in a hearing); *E.W. and P.W., Parents and Next Friend of B.W. v. Town of Marshfield et al*, 2025 WL 3063246 (2025) (false criminal complaint that resulted in disabled student being suspended from school not sufficient to shock the conscience); *Highway Materials, Inv. v. Whitemarsh Twp.*, 386 F. App'x 251, 258 (3d Cir. 2010) (refusal to cooperate with landowner, improper application of township ordinances, differential treatment, and active effort to deny landowner the opportunity to develop its land— may violate state law but "simply do not shock the conscience"); *Freeman v. Town of Hudson,* 714 F.3d 29, 41 (1st Cir. 2013) (defendants' alleged pursuit of "unsupported criminal charges against [plaintiff] for personal reasons" did not give rise to a substantive due process claim); *Michel v. Town of Hampden,* 2012 WL 893740, *2 (D. Ma. 2012) (assertions that defendants "maliciously procured an arrest warrant, exaggerated the situation to state police, illegally searched Plaintiff's home, prosecuted him based on false evidence, and made defamatory statements to the media" failed to "meet the high shocks the conscience standard necessary to state a substantive due process claim."); *Vasquez v. City of Hamtramck*, 757 F.2d 771, at 772–73 (6th Cir. 1985) (concluding that an alleged malicious prosecution and issuing a warrant for unpaid parking tickets does not shock the conscience).

### A.    Defendants are entitled to qualified immunity.

[¶56]    Last, even if Plaintiffs state a Substantive Due Process claim, they cannot demonstrate that the proffered violation was clearly established at the level of specificity required for purposes of qualified immunity. They cannot identify prior cases similar to the unique circumstances here particularly where none of the conduct shocks the conscience so as to put each individual Defendant on notice that his conduct specifically violated Plaintiffs' substantive due process rights. Plaintiffs allege that by offloading a property that concealed federal crimes, violence, and was used for illicit purposes, plaintiff Hoefer was thereafter terrorized and endured risks to his safety. Doc. No. 1 at ¶¶ 1143, 1153-54. Plaintiffs allege this violates their right to due process for deprivation of a liberty interest, but it is unclear what actual liberty interest is at issue that is protected by the due process clause, i.e. a liberty interest in a property free from any encumbrances whatsoever?

And if so, how can individual Defendants who are arms' length creditors be on notice that such a liberty interest was at stake? Such an interest certainly is not clearly established by law and the Defendants could not have violated Plaintiffs' substantive due process rights. Regardless, Defendants are subject to qualified immunity because in addition, the broad allegations against Defendants collectively do not establish that any of the individual Defendants acted in an arbitrary or capricious manner or their individual behavior was conscious shocking such that they bear personal liability for violating clearly established constitutional rights.

[¶57]   Importantly, subjective motivation is irrelevant, and allegations of impermissible motivation cannot defeat qualified immunity. Rather the inquiry remains an objective one, asking whether it would have been obvious to the named defendants, without reference to motivation, that they were in violation of Due Process. No such body of law exists.

## VIII.   This Court must dismiss Count VI: an 18 U.S.C. § 1595 claim alleging that Plaintiffs are entitled to relief after a violation of 18 U.S.C. § 1589.

[¶58]   18 U.S.C. § 1589 is a criminal statute that illegalizes "Forced Labor." This section "was enacted as part of the Trafficking Victims Protection Act of 2000." *Taylor v. Salvation Army Nat'l Corp.*, 110 F.4th 1017, 1030 (7th Cir. 2024). Congress's intent was to "combat severe forms of worker exploitation that do not rise to the level of involuntary servitude." *Id*.

[¶59]   Count VI must be dismissed. First, the statute was intended to prevent the exploitation of workers, and there are no factually specific allegations in the Complaint that Plaintiffs ever worked or were employed by any of the individual Defendants or that any of the individual Defendants profited or benefitted. Arm's length financial transactions are simply outside the purview of the statute, regardless of alleged abusive actions. Count VI is a misapplication of the statute. *Taylor*, 110 F.4th at 1030; *Adia*, 933 F.3d at 94; *Muchira v. Al-Rawaf*, 850 F.3d 605, 618-19 (4th Cir. 2017) ("forced labor" situations involve circumstances such as squalid or otherwise intolerable living conditions, extreme isolation (from family and the outside world), threats of inflicting harm upon the victim or others (including threats of legal process such as arrest or deportation), and exploitation of the victim's lack of education and familiarity with the English language, all of

which are "used to prevent [vulnerable] victims from leaving and to keep them bound to their captors." (quoting *United States v. Callahan*, 801 F.3d 606, 619 (6th Cir. 2015)).

[¶60]   Second, Count VI, like all counts before, fails to satisfy the pleading standard of Rule 8(a)(2). Nowhere are there any factual allegations that could fairly meet the statutory elements, even assuming a statute enacted to implement the Thirteenth Amendment could apply to a financial transaction like that alleged in this case. Plaintiffs again rely solely on legal conclusions. Doc. No. 1 at ¶¶ 1169–1194.

### IX.    This Court must dismiss Count VII: a 42 U.S.C. § 1983 claim alleging that Plaintiffs suffered an unconstitutional taking in violation of the Fifth, Fourth, and Fourteenth Amendments.

[¶61]   Plaintiffs fail to sufficiently plead claims for an unconstitutional taking under the Fourth, Fifth, and Fourteenth Amendments. Defendants note that it is an error to refer to a claim under the Fourth Amendment as an "unconstitutional taking." The Takings Clause sits within the Fifth Amendment. U.S. Const. amend. V. Rather, it seems that Plaintiffs are making a claim of unconstitutional search and seizure. U.S. Const. amend. IV.

#### A.    Takings Clause analysis.

[¶62]   The Defendants are agents of the State of North Dakota, and, therefore, Plaintiffs improperly assert this takings claim against them. *See Lion Raisins, Inc. v. United States*, 416 F.3d 1356, 1362 (Fed. Cir. 2005) ("The Supreme Court has held that if agents of the federal government accomplish takings of private property, the action of the agent is the act of the government and it is the federal government that is liable for suit, not the agent.") (citation modified). This Court must dismiss the Plaintiffs' takings claim against the Defendants on this basis.

[¶63]   Going further, Plaintiffs failed to demonstrate a takings claim on the merits. The Fifth Amendment commands that "private property [shall not] be taken for public use, without just compensation. U.S. Const. amend. V. When property is taken, "the owner is entitled to the fair market value of his property at the time of the taking." *Almota Farmers Elevator & Warehouse Co. v. United States*, 409 U.S. 470, 474 (1973). Owners may not bring an action until their property is actually taken. *Knick v. Township of Scott, Pennsylvania*, 588 U.S. 180, 189 (2019).

[¶64]   There are two main classes of takings: First, "[w]here the government authorizes a physical occupation of property (or actually takes title)" and (2) "where the government merely regulates the use of property," but the regulation amounts to a taking. *Yee v. City of Escondido, Cal.*, 503 U.S. 519, 522 (1992). Nowhere do Plaintiffs allege that they lost title to any part of their property. Doc. No. 1 at ¶¶ 1196–1210. Therefore, if they have a valid takings claim, it must fall under the second class.

[¶65]   Courts use the following factors to determine whether the second class of takings has occurred: (1) "[t]he economic impact of the regulation on the claimant and, particularly, [(2)] the extent to which the regulation has interfered with distinct investment-backed expectations." *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978). "[T]he purpose of the regulation" is also a relevant consideration. *Yee*, 503 U.S. at 523.

[¶66]   Plaintiffs plead that a taking occurred by alleging that certain technical disruptions, computer hacking, and data theft "constituted an unconstitutional taking of Plaintiffs' property . . . without just compensation . . . ." Doc. No. 1 at ¶ 1203. These allegations are not even tailored at the correct standard. Plaintiffs do not allege, even with legal conclusions, that a government entity issued a regulation, which interfered with their property interests. Here, the Fund is a creditor of the business when it provided a line of credit to Plaintiffs to relocate their business to North Dakota for economic development purposes. The Fund does not issue a license or permit or engage in some other regulatory scheme. Plaintiffs simply have the law wrong. This takings claim is beyond salvageable. Plaintiffs are, again, treating the Takings Clause as an avenue for tort, i.e., my computer was hacked into, and now, we want damages. Doc. No. 1 at ¶ 1210. Claims, which amount to "[a]llegations of common law torts [are] insufficient to state a valid cause of action under [§] 1983." *Cramer*, 648 F.2d at 945. To obtain a remedy for a tort, a plaintiff must turn to "state court" and make claims "under traditional tort-law principles." *Baker*, 443 U.S. at 146.

### i.      Defendants are entitled to qualified immunity.

[¶67]   Finally, there is not a single factual allegation that identifies the specific conduct or action committed by any individual Defendant that would plausibly give rise to a claim under Section

1983 for a taking under the Fifth Amendment if one could even properly state a claim against a state official in his individual capacity under Section 1983. Where a plaintiff does not specifically allege that a defendant "was personally involved in or had direct responsibility for" any violations, there can be no "cognizable" § 1983 claim. *Coffman*, 126 Fed. Appx. at *1. Because a takings claim cannot be maintained against an individual state employee, Plaintiffs will be unable to identify a body of case law that establishes that any of the complained of conduct could result in an unconstitutional taking by each individual Defendant so as to put each on reasonable notice their conduct would violate Plaintiffs' constitutional rights: "'takings actions sound against government entities rather than individual state employees in their individual capacities.'" *Hinkle Fam. Fun Ctr., LLC v. Grisham*, 586 F. Supp. 3d 1118, 1130 (D.N.M. 2022), *aff'd*, No. 22-2028, 2022 WL 17972138 (10th Cir. Dec. 28, 2022) (quoting *Langdon v. Swain*, 29 F. App'x 171, 172 (4th Cir. 2002); *see also Vicory v. Walton*, 730 F.2d 466, 467 (6th Cir. 1984) (holding that an individual cannot commit and be liable for a taking under the Fifth Amendment). The Defendants are entitled to qualified immunity.

### B.    Search and seizure analysis.

[¶68]   The Fourth Amendment states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. There are preliminary matters that a plaintiff must establish before a court may proceed with Fourth Amendment analysis. First, an action that allegedly violates the Fourth Amendment must be "attributable to the Government or its agents." *Relford v. Lexington-Fayette Urban Cnty. Gov't*, 390 F.3d 452, 457 (6th Cir. 2004). Second, the action must actually amount to a "search" or "seizure." *Id*. (quotations omitted).

[¶69]   Here, Plaintiffs have alleged that an unlawful search and seizure occurred when the Defendants hacked into Plaintiffs computers. Doc. No. at ¶¶ 1200–1204. Specifically, Plaintiffs allege that Defendants had hacked into their computers and Plaintiffs came to this conclusion

because an unnamed cybersecurity contractor told them that officials of the State of North Dakota had done similar things in the past. *Id.* at ¶¶ 1200–1203.

[¶70]    There are no factual allegations sufficient to attribute the alleged hacking to the individual Defendants. Plaintiffs are not suing the State of North Dakota, but five individuals. Section 1983 liability is personal. *Weber*, 580 F.3d at 733. "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Mayorga*, 442 F.3d at 1132. To be liable under § 1983, the individual defendant must be personally responsible for a deprivation of the constitutional right, i.e., the defendant must have done "some affirmative act, participated in the affirmative act of another, or failed to perform an act which resulted in the deprivation of plaintiff's federally protected rights." *Temple*, 905 F. Supp. at 672. Where a plaintiff does not specifically allege that a defendant "was personally involved in or had direct responsibility for" any violations, there can be no "cognizable" § 1983 claim. *Coffman*, 126 Fed. Appx. at *1.

[¶71]    Consequently, Plaintiffs must sufficiently allege, with factual support, that each individual Defendant hacked into Plaintiffs' computers. They have failed to do so. The Court may dismiss on this basis alone. *Relford*, 390 F.3d at 457.

[¶72]    In *McNaughton v. De Blasio*, the appellant appealed from a dismissal of his claims. 644 Fed. Appx. 32 (2d Cir. 2016). The appellant had alleged that police had violated his rights under the Fourth Amendment because they had "hacked his computer and slandered, stalked, baited, and searched him." *Id.* "None of his allegations against any of the defendants satisfy the pleading standards of *Twombly*" *Id.* at 33. The allegations in *McNaughton* are identical to the allegations presented in Count VII. This Court must dismiss this claim.

### i.    Defendants are entitled to qualified immunity.

[¶73]    Last, even if Plaintiffs state a claim under the Fifth, Fourth, and Fourteenth Amendments, they cannot demonstrate that the proffered violation was clearly established at the level of specificity required for purposes of qualified immunity. They cannot identify prior cases similar to the unique circumstances here— outlined in a 244-page Complaint that would have put every reasonable public official on notice that they were violating the Fifth, Fourth, and Fourteenth

Amendments. Importantly, subjective motivation is irrelevant, and allegations of impermissible motivation cannot defeat qualified immunity. Rather the inquiry remains an objective one, asking whether it would have been obvious to the named defendants, without reference to motivation, that they were in violation of the Fifth, Fourth, and Fourteenth Amendments. No such body of law exists. Furthermore, Plaintiffs fail to make individualized allegations against any of the individual Defendants. Therefore, defendants are entitled to qualified immunity.

X.    **This Court must dismiss Count VIII: alleging that Defendants conspired to deprive Plaintiffs' rights under the First, Fourth, Fifth, and Fourteenth Amendments in violation of 42 U.S.C. § 1985.**

[¶74]    While the Plaintiffs have included language from § 1985(2), there are no allegations that they were prevented equal access to state court or other judicial proceedings. *Lucas v. Henrico Public School Bd.*, 2019 WL 5791343 at *11 (E.D. Virginia) (1985(2) limited to state court proceedings) (citing *Kush v. Rutledge*, 460 U.S. 719 (1983)); *Traudt v. Lebanon*, 749 F.Supp.3d 251, 261 (D. N.H. 2024). Therefore, it appears Plaintiffs simply attempt to use Section 1985(3) in a failed attempt to resurrect their claims brought pursuant to Section 1983. This Court must dismiss Count VIII along with the proceeding seven counts.

[¶75]    The Seventh Circuit has held that a "bare allegation that a defendant conspired with other defendants" does not satisfy the notice requirements of Fed. R. Civ. P. 8(a)(2). *Ryan v. Mary Immaculate Queen Ctr.*, 188 F.3d 857, 860 (7th Cir. 1999). "[N]otice implies some minimum description of the defendant's complained-of conduct." *Id*. The court then explained what kinds of facts would satisfy this notice requirement:

> A conspiracy is an agreement and there is no indication of when an agreement between Weiser and the other defendants was formed, what its terms were except that they somehow included a search of the premises occupied by the plaintiffs, or what Weiser's role was in the October 23 incident since he didn't participate in the search that day. The form and scope of the conspiracy are thus almost entirely unknown. This is a case of a bare allegation of conspiracy, and such an allegation does not satisfy Rule 8, either under our cases . . . or cases in the other circuits that have dealt with the issue.

*Id*. In a civil conspiracy claim, "the plaintiff must allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement." *Davis v. Jefferson*

31

*Hosp. Ass'n*, 685 F.3d 675, 685 (8th Cir. 2012) (quoting *City of Omaha Emps. Betterment Ass'n v. City of Omaha*, 883 F.2d 650, 652 (8th Cir. 1989)). A plaintiff does not satisfy this burden without "pointing to at least some facts which would suggest that the alleged conspirators reached an understanding to violate his rights." *City of Omaha*, 883 F.2d at 652 (citation modified); *see also Iqbal*, 556 U.S. at 679 (requiring the plaintiff to plead enough factual content to allow a court to draw the reasonable inference that the defendant is liable for the misconduct alleged). "For a claim of conspiracy under Section 1983, . . . the plaintiff must show evidence sufficient to support the conclusion that the defendants reached an agreement to deprive the plaintiff of constitutionally guaranteed rights." *Burton v. St. Louis Bd. of Police Comm'rs*, 731 F.3d 784, 798–99 (8th Cir. 2013).

[¶76]    To survive a motion to dismiss, a plaintiff's "allegations of a conspiracy must be pleaded with sufficient specificity and factual support to suggest a 'meeting of the minds.'" *Deck v. Leftridge*, 771 F.2d 1168, 1170 (8th Cir. 1985) (*quoting Smith v. Bacon*, 699 F.2d 434, 436 (8th Cir. 1983)).  To be sufficiently specific, a plaintiff "must at least allege that 'the defendants had directed themselves toward an unconstitutional action by virtue of a mutual understanding,' and provide some facts 'suggesting such a "meeting of the minds."'" *Smith*, 699 F.2d at 436-37 (*quoting White v. Walsh*, 649 F.2d 560, 561 (8th Cir. 1981)).

[¶77]    "A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983). The Eighth Circuit has upheld the dismissal of a claim for civil conspiracy where the complaint contains only conclusory and speculative assertions about an agreement to accomplish an unconstitutional or tortious act. *See Quintero Cmty. Ass'n Inc. v. F.D.I.C.*, 792 F.3d 1002, 1011 (8th Cir. 2015).

[¶78]    In addition, district courts within the Eighth Circuit and elsewhere have routinely dismissed claims for civil conspiracy when the allegations are conclusory in nature and not sufficient to show a meeting of the minds for the specific purpose of depriving a plaintiff of constitutional rights or establishing the element of a claim:

However, regardless of whether Plaintiff is able to successfully plead any individual constitutional violations, Plaintiff fails to allege any *nonconclusory*, *plausible* facts that would support his claims that the State Defendants actually conspired. Plaintiff merely alleges in conclusory fashion that the State Defendants held daily staff meetings at which they conspired to have Plaintiff assaulted. Plaintiff goes so far as to allege that the State Defendants actually instructed Defendants Brown and Hammond to perform the underlying assaults. However, Plaintiff alleges no specific facts in his First Amended Complaint that would lead one to plausibly conclude that this was indeed the case or that there was any sort of conspiracy. Like the complaint in *Iqbal*, which only alleged generally that supervisory officials "knew of, condoned, and willfully and maliciously agreed to" subject the plaintiff to harsh conditions for an illegitimate reason, Plaintiff's "allegations are conclusory and *not entitled to be assumed true*." *Iqbal*, 556 U.S. at 681 (emphasis added); *see also Twombly*, 550 U.S. at 554–55. The Court is "mindful that 'conspiracies are by their nature usually clandestine. It is unlikely that a plaintiff in a conspiracy case will be able to provide direct evidence of a conspiratorial agreement. Thus, such evidence is not necessary to prove that a civil conspiracy existed.'" *White v. Walsh*, 649 F.2d 560, 561 (8th Cir. 1981) (*quoting Sparkman v. McFarlin*, 601 F.2d 261, 278 n.19 (7th Cir. 1979) (en banc) (Swygert, J., dissenting)). However, even though a plaintiff need not provide direct evidence of a conspiracy, he still must assert some *plausible* evidence. Here, Plaintiff has alleged no specific facts that would support his Section 1985 conspiracy claims.

*Sorenson v. Minn. Dep't of Human Servs.*, Civ. No. 13-2958 ADM/LIB, 2014 WL 4185817, at

*23 (D. Minn. Aug. 22, 2014) (footnote omitted), *order stricken in part*, No. CIV. 13-2958

ADM/LIB, 2014 WL 6901804 (D. Minn. Sept. 8, 2014); *see also Darton Envtl., Inc. v. FJUVO*

*Collections*, LLC, 332 F. Supp. 3d 1022, 1036 (W.D. Va. 2018) (noting, in dismissing conspiracy

claims that "a claim for civil conspiracy fails if the plaintiff fails to allege with any specificity the

persons who agreed to the alleged conspiracy, the specific communications amongst the

conspirators, or the manner in which any such communications were made.") (citation modified);

*Meyer v. Pfeifle*, No. 4:18-CV-04048-KES, 2019 WL 1209776, at *5 (D.S.D. Mar. 14, 2019)

("Although Meyer believes individuals have conspired against her, her allegations, supported by

mere conclusory statements, are not enough. Thus, Meyer fails to state a … § 1983 conspiracy

claim…."); *Baker v. Hawkins*, No. 1:18-CV-113 AGF, 2019 WL 77352, at *5 (E.D. Mo. Jan. 2,

2019) ("Allegations of conspiracy must be pled with sufficient specificity and factual support to

suggest a meeting of the minds. Plaintiff has simply failed to do so.") (citation modified); *Smith v.*

*Green*, No. 1:17-CV-154-NAB, 2018 WL 2023527, at *3 (E.D. Mo. May 1, 2018) ("Because

plaintiff has tendered only the barest assertion of wrongdoing without the factual enhancement

required to push the claim across the line between possibility and plausibility of entitlement to relief, he fails to state . . . a claim of civil conspiracy.") (*citing Iqbal*, 550 U.S. at 557); *Pettijohn v. Zumwalt*, No. 2:15CV00025 ERW, 2015 WL 1809414, at *3 (E.D. Mo. Apr. 21, 2015) ("Because there are no factual, non-conclusory allegations that would show that Corizon and Dr. Cabrera conspired to impinge upon plaintiff's constitutional rights, the complaint stops short of the line between possibility and plausibility of entitlement to relief.") (quotations omitted).

[¶79]   Here, Plaintiffs have failed to satisfy the heightened pleading standard. Plaintiffs allege multiple times that Defendants have conspired but without the sufficient specificity to suggest a meeting of the minds with respect to any of the myriad of complained of acts: "Defendants conspired to deprive Plaintiffs of their equal protection rights and have acted to hinder State authorities from providing Plaintiffs with equal protection of the laws." (Doc No. 1 at ¶ 1217); Defendants "engaged in conspiracy to seek to cause Mr. Hoefer to sign a 'gag-order . . . .'" (*Id.* at ¶ 1218); "Akason and Lehman took steps to further this conspiracy by seeking to compel Mr. Hoefer to sign this 'gag-order,' and by deceiving Mr. Hoefer as to its nature and meaning." (*Id.* at ¶ 1219); "All Defendants later conspired together to seek to effect [sic] a 'taking' of Plaintiffs' Factory . . . ." (*Id.* at ¶ 1222); "In so doing, all Defendants conspired to violate clearly established federal law . . . ." (*Id.* at ¶ 1227).

[¶80]   These statements are similar to the allegations in *Prasad*, where the plaintiff alleged that government officials "conspired against him on the basis of his 'race and national origin.'" 685 Fed. Appx. at 540. There, the Ninth Circuit concluded that this plaintiff's allegations were insufficient. *Id*. Such statements are "bare allegations," and they cannot satisfy the heightened pleading requirements associated with a conspiracy claim. *Ryan*, 188 F.3d at 860; *Srivastava*, 83 Fed. Appx. at 810. This Court must dismiss Count VIII. Even though the term "conspired" and "conspiracy" are used in abundance throughout the Complaint, there is a complete dearth of facts attributable to each individual Defendant's conduct, action, communication, or agreement to ascertain his involvement in the purported conspiracy. Again, individual liability is personal, and without specific assertions of each individual Defendant's conduct and how it contributed or

agreed to a conspiracy, it is insufficient for a Section 1983 claim. *See Boxill v. O'Grady*, 935 F.3d 510, 519 (6th Cir. 2019) (dismissing plaintiff's civil conspiracy claim under Section 1983 finding the complaint failed to allege facts that were plausible, non-conclusory, and relevant to the individual liability of each defendant, and failed to allege facts specific to each defendant to demonstrate each defendant joined the conspiracy, shared in the conspiratorial objective, and/or committed specific acts in furtherance of the conspiracy.); *Faulk v. City of St. Louis, Missouri*, 30 F.4th 739, 748 (8th Cir. 2022) (generalized assertions of conspiracy, lacking any factual enhancement and factual allegations sufficient to suggest a discriminatory state of mind are insufficient to state a civil conspiracy claim and the defendant was entitled to qualified immunity).

### A. Defendants are entitled to qualified immunity.

[¶81]   Last, Defendants are entitled to qualified immunity because as briefed within each respective section *supra*, "there was no clearly established law that the alleged object of [the Defendants] was actually unconstitutional" under the various theories advanced by Plaintiff. *Frasier v. Evans*, 992 F.3d 1003, 1024 (10th Cir. 2021). Importantly, if the individual Defendants are entitled to qualified immunity on each individual claim, "it necessarily follows that they also are entitled to qualified immunity on [Plaintiffs] conspiracy claim insofar as it alleges a conspiracy to retaliate against [Plaintiffs] in violation of the same . . . right." *Id*. If the law is not clearly established that the complained of conduct would be unlawful under the First, Fourth, Fifth, or Fourteenth Amendments, such as retaliation, then it must follow "that the law was not clearly established that it was unlawful to conspire to engage in the same" act. *Id*. Because Plaintiffs cannot demonstrate that the proffered violations were clearly established in Claims I-VII of the Complaint, the individual Defendants are necessarily entitled to qualified immunity because it could not have been clearly established to be unlawful to conspire to engage in the acts that form the basis of Claims I-VII. The Defendants are entitled to qualified immunity on Plaintiffs' conspiracy claim.

**CONCLUSION**

[¶82]   Defendants are entitled to dismissal of the Plaintiffs' Complaint because it fails to state a claim for which relief can be granted against the individual Defendants and Defendants are entitled to qualified immunity. Plaintiffs' Complaint makes broad assertions and characterizations without making specific, individualized allegations as to each individual Defendant to establish personal liability under Section 1983. But the Court need not stop there because even assuming the Complaint does as much, the individual Defendants are entitled to qualified immunity because Plaintiffs are unable to point to a body of law that would put each individual Defendant on notice that their specific conduct would have violated Plaintiffs constitutional rights; simply, the rights are not clearly established and beyond debate. The Defendants respectfully request the Complaint be dismissed with prejudice because Defendants are entitled to qualified immunity on each claim.

Dated this 17th day of November, 2025.

State of North Dakota
Drew H. Wrigley
Attorney General


By:    /s/ Courtney R. Titus
       Courtney R. Titus
       Assistant Attorney General
       State Bar ID No. 08810
       Office of Attorney General
       Email ctitus@nd.gov

By:     /s/  Austin H. Artz
       Austin H. Artz
       Assistant Attorney General
       State Bar ID No. 09708
       Office of Attorney General
       500 North 9th Street
       Bismarck, ND 58501-4509
       Telephone (701) 328-3640
       Facsimile (701) 328-4300
       Email aartz@nd.gov

Attorneys for Defendants.